IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MICHAEL BOURNE, <br> TDCJ #1567258, <br><br> Plaintiff, <br><br> v. <br><br> LT. GUNNELS, et al., <br><br> Defendants. | § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § | CIVIL ACTION NO. H-16-0515 |

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Michael Bourne has filed a Prisoner's Civil Rights Complaint under 42 U.S.C. § 1983 ("Complaint") (Docket Entry No. 1), alleging that excessive force was used against him during his confinement in the Texas Department of Criminal Justice ("TDCJ"). Pending before the court is Defendants' Motion for Summary Judgment with Brief in Support ("Defendants' Motion") (Docket Entry No. 56), to which Bourne has filed a Response in Opposition ("Plaintiff's Response") (Docket Entry No. 60). After considering all of the pleadings, the exhibits, and the applicable law, the court will grant the Defendants' Motion and will dismiss this case for the reasons explained below.

# I.  **Background**

Bourne is presently incarcerated at the French Robertson Unit in Abilene.[1] The Complaint stems from a use of force that occurred at the Estelle High Security Unit in Huntsville on November 21, 2014.[2] At that time, the following defendants were employed by TDCJ as correctional officers or supervisory officials at the Estelle High Security Unit: (1) Lieutenant Michael Gunnels; (2) Sergeant Carlos Applewhite; (3) Officer Anthony Howard; (4) Officer Ronald Weaver; (5) Officer Robert LeBlanc; (6) Officer Ernest Price; (7) Officer Ajisefini; and (8) Officer Sascha Ford.[3]

Bourne's allegations are summarized below, followed by a summary of the arguments raised in Defendants' Motion and the evidence presented to rebut Bourne's claims.

## A.  **Bourne's Allegations**

Bourne contends that on November 21, 2014, he was standing at his cell door, asking to speak with Captain Norman about some money that was improperly taken from Bourne's inmate trust fund account.[4] As he did so, Bourne concedes that he had wrapped a towel and sheet around the food-tray slot of his cell door, jamming it in violation

---

[1]Notice of Change of Address, Docket Entry No. 59, p. 1.

[2]Complaint, Docket Entry No. 1, p. 3.

[3]Id. at 3; [Supplemental] Complaint, Docket Entry No. 28, pp. 1-2.

[4]More Definite Statement, Docket Entry No. 9, p. 2.

-2-

of prison rules so that it would not close.[5] Bourne denies that he made any verbal threats or threatening moves.[6] Without any provocation on his part, Bourne claims that he was sprayed with an entire can of chemical agent and assaulted by several officers.[7]

Bourne describes the assault as "brutal."[8] Bourne contends that Officer Howard punched him repeatedly in the face and that he also slammed his face several times into the concrete floor while gouging him in the eyes.[9] Officer Weaver punched Bourne in the face several times as well and then stuck a gloved finger into his anus through Bourne's boxer shorts, which were covered in chemical agent.[10] Officer LeBlanc also punched Bourne in the face several times before wrestling him to the ground, where LeBlanc grabbed the front of Bourne's boxer shorts and twisted his genitals.[11] Once the assault was over, Bourne contends that Sergeant Applewhite returned him to his cell, which was contaminated with chemical agent, and refused to give him cleaning supplies or let him shower.[12]

As a result of the assault, Bourne reportedly suffered "a burning and sore anus, bruised and sore genitals, a broken nose, a busted [and] bleeding lip, a chipped tooth, the whole side of [his]

---

[5]Id.
[6]Id. at 2-3.
[7]Id.
[8]Step 1 Grievance #2015056398, Docket Entry No. 1-1, p. 1.
[9]More Definite Statement, Docket Entry No. 9, pp. 9-10.
[10]Id. at 10.
[11]Id. at 11.
[12]Id. at 8-9.

head [and] face was swollen and bruised, [his] eyes were swollen almost completely shut, with [his] left eye swollen and lacerated at the eyebrow, and [he] had similar scratches on [his] chest and back."[13] In addition, for several days after the incident, Bourne suffered "nausea, headaches, vertigo, dizziness, incoherency, and loss of consciousness multiple times."[14]

Based on these allegations, Bourne contends that Lieutenant Gunnels and Officers Howard, Weaver, LeBlanc, Price, and Ajisefini violated his rights under the Eighth Amendment by using excessive force.[15] Bourne contends further that Lieutenant Gunnels, Sergeant Applewhite, and Officer Ford violated his rights under the Eighth Amendment by failing to intervene and stop the use of excessive force by the other defendants, particularly, Howard, Weaver, and Leblanc.[16] Bourne also contends that Sergeant Applewhite acted with deliberate indifference by placing him in a cell that was contaminated with chemical agent and not allowing him to shower.[17] Bourne adds that Officer Weaver violated his constitutional rights under the First Amendment by sexually assaulting him in retaliation for a grievance that he filed against Weaver previously on April

---

[13]Id. at 3.

[14]Id.

[15]Complaint, Docket Entry No. 1, pp. 3-6; Supplemental Complaint, Docket Entry No. 28, pp. 1-3.

[16]Complaint, Docket Entry No. 1, pp. 3-4; Supplemental Complaint, Docket Entry No. 28, p. 3.

[17]Complaint, Docket Entry No. 1, p. 5; More Definite Statement, Docket Entry No. 9, p. 8-9.

28, 2014.[18] Bourne seeks compensatory and punitive damages against all of the defendants under 42 U.S.C. § 1983.[19]

## B. Defendants' Motion and Evidence

The defendants have filed a joint motion for summary judgment, arguing that Bourne's claims for monetary damages against them in their official capacity are barred by the Eleventh Amendment.[20] Noting further that Bourne seeks monetary damages from a use of force that resulted in a disciplinary conviction, the defendants argue that his excessive-force claims are barred by the rule in Heck v. Humphrey, 114 S. Ct. 2364 (1994), because the disciplinary conviction that he received has not been invalidated or otherwise set aside.[21] Alternatively, the defendants argue that Bourne cannot establish a constitutional violation and, therefore, they are entitled to qualified immunity from his claims.[22] In support of that argument, the defendants have provided an administrative report regarding the use of force (the "Use of Force Report").[23] The defendants also provide a video of the incident and its aftermath (the "Use of Force Video"), which clearly contradicts Bourne's contention that he sustained serious injury as the result

---

[18]Complaint, Docket Entry No. 1, p. 6.

[19]Id. at 4.

[20]Defendants' Motion, Docket Entry No. 56, pp. 7-8.

[21]Id. at 8-12.

[22]Id. at 12-27.

[23]Use of Force Report, Docket Entry No. 56-2, pp. 1-70.

of a brutal beating that was administered without any provocation.[24]

The defendants' evidence shows that the use of force was authorized by a supervisory official at the Estelle High Security Unit (Captain Vincent) and conducted pursuant to the TDCJ Use of Force Plan after Bourne "took control" of the food-tray slot to his cell "and refused to relinquish it."[25] The video confirms that Bourne had jammed open his food-tray slot with a sheet and towels.[26] Bourne had also obscured the windows of his cell door with a sheet so that officers could not see inside the cell, which was dark at the time because Bourne had turned out the lights.[27] Lieutenant Gunnels assembled a five-man team to use a chemical agent and force, if necessary, to extract Bourne from his cell (cell 113) and regain control of the door.[28] The five-man team consisted of Officers Howard, Price, Ajisefini, LeBlanc, and Weaver; Officer Ford operated the video camera that was used to record the incident.[29]

Before any use of force occurred, Gunnels twice ordered Bourne to relinquish control of the food-tray slot, warning Bourne that a

---

[24]Use of Force Video, Docket Entry No. 58, on file in the Clerk's Office.

[25]Use of Force Report, Docket Entry No. 56-2, p. 6; Use of Force Video, Docket Entry No. 58, video clip 1 at 00:01-00:30.

[26]Use of Force Video, Docket Entry No. 58, video clip 2 at 00:10.

[27]Id.

[28]Id., video clip 1 at 00:31-01:04.

[29]Id.

chemical agent would be used and that a team of officers was prepared to enter the cell if he did not comply.[30] When Bourne refused to comply, Gunnels deployed a chemical agent by spraying it through the open food-tray slot for no more than five seconds, using approximately half a canister.[31] While the officers waited nearby for the chemical agent to take effect, Bourne could be heard yelling and cursing loudly at Lieutenant Gunnels, taunting the officers to "come on in [to the cell]" and inviting them to "beat [his] ass."[32]

Approximately five minutes after the chemical agent was deployed, Bourne continued to disobey orders and curse at the officers.[33] It took several more minutes for the officers to open the cell door because Bourne had tampered with it, preventing it from opening.[34] To open the cell door, another officer had to use a chain hoist to pry open the door, which Bourne had jammed shut.[35] When officers were finally able to pry the door open, Bourne did not retreat from his position at the cell door and attempted to block the lead officer (Howard), who had to force his way into the cell with the plastic riot shield that he was carrying to protect

---

[30]Id., video clip 2 at 00:05-00:30.

[31]Id. at 00:30-00:35;  Use of Force Report, Docket Entry No. 56-2, p. 10 (noting that 10.9 ounces of a 19.3 ounce can of chemical agent was used during the incident).

[32]Use of Force Video, Docket Entry No. 58, clip 2 at 00:37-04:05.

[33]Id. at 04:20.

[34]Id. at 04:20-07:50.

[35]Id.

himself.[36]  Because Bourne had turned out the lights in the cell, the ensuing altercation cannot be seen from the hallway.[37] Moments after entering the darkened cell, however, officers can be heard repeatedly ordering Bourne to "stop resisting."[38]  Bourne was subdued after a brief struggle and restraints were applied to his arms and legs.[39]

Within five minutes after the officers entered his cell, Bourne emerged under his own power and was escorted to a nearby infirmary for a use-of-force physical examination by a health care provider.[40]  The video shows that Bourne, who was clad only in a pair of white boxer shorts and shoes, was bleeding from a small cut above his left eye when he exited his cell.[41]  The front of Bourne's boxer shorts was covered with orange chemical spray.[42]

At the start the physical examination, Bourne complained that a "black sergeant" hit him in the face and grabbed his genitals during the use of force.[43]  The registered nurse who conducted the examination noted only a scratch above Bourne's left eye, some

_____

[36]Id.
[37]Id.
[38]Id. at 07:40-07:55.
[39]Id. at 07:55-11:00.
[40]Id. at 12:50.
[41]Id.
[42]Id.
[43]Id. at 14:43, 17:15.

swelling near Bourne's right eye, and some minor abrasions on his back consistent with being taken to the floor.[44] Bourne refused to open his eyes when asked during the examination, claiming that they were swollen shut from the chemical agent and from being gouged by the lead officer during the use of force.[45] When Lieutenant Gunnels asked Bourne if he had any injuries other than the scratch on his face, Bourne complained that his testicles were burning from the chemical agent that covered the front of his boxer shorts.[46]

As he was escorted from the infirmary back to his cell block, Bourne continued to argue with and curse at the officers for using force against him, inciting other inmates to do the same.[47] Bourne and the officers waited in the hallway for several minutes while his cell was decontaminated.[48] While they were waiting, Bourne bantered with another inmate who was yelling at the officers.[49] When the other inmate advised Bourne that Officer Weaver was one of the officers on the five-man team, Bourne accused Weaver of grabbing

---

[44]Id. at 14:30-15:00. Bourne's minor injuries are also documented as part of the Use of Force Report, Docket Entry No. 56-2, pp. 41-43. See also Use of Force Nursing Note, Docket Entry No. 56-3, p. 3 (describing the laceration on Bourne's left eye brow as "1cm long and 1 mm wide" and noting that Bourne was "alert and oriented x3").

[45]Use of Force Video, Docket Entry No. 58, video clip 2 at 21:00.

[46]Use of Force Video, Docket Entry No. 58, video clip 2 at 21:44-22:50.

[47]Id. at 23:40-25:00.

[48]Id. at 25:18-29:40.

[49]Id.

his penis during the use of force and made reference to a grievance that he had filed previously against Weaver, who he called a "big baby girl."[50]

After Lieutenant Gunnels reported that the cell had been wiped down and decontaminated, Bourne was returned to his cell.[51] The video shows that there was no chemical agent on the door or the food-tray slot, which was now closed, and there was no sign of chemical agent on the floor or the walls that could be seen from the doorway.[52] After Bourne's restraints were removed, Lieutenant Gunnels instructed him to decontaminate by washing his face and any other exposed area with copious amounts of cold water using the sink in his cell.[53] Before the video terminated, Gunnels also gave Bourne oral and written instructions about his opportunity to provide a statement about the use of force.[54]

Consistent with the TDCJ Use of Force Plan, officials conducted an administrative review of the incident.[55] The officers who participated in the use of force provided written statements, reporting that Bourne fought with the extraction team and resisted

---

[50]Id. at 29:44.

[51]Id. at 29:55-30:00.

[52]Id. at 30:15-31:00.

[53]Id. at 32:55-33:10.

[54]Id. at 34:00-34:40.

[55]Use of Force Report, Docket Entry No. 56-2, p. 5.

their efforts to subdue him.[56]   After considering all of the statements, medical records of Bourne's physical, and the video of the incident, officials concluded that the use of force was "justified" and that the officers' actions were "appropriate."[57]

After the use of force Bourne was charged in Case #20150090457 with violating Code 18.2 and Code 23.0 of the TDCJ Disciplinary Rules by: (1) tampering with his food-tray slot, and (2) creating a disturbance or significant disruption of operations such that force had to be used.[58]   Bourne did not deny tampering with his food-tray slot, but explained that he only did so because he wanted to talk to Captain Norman, reasoning that the force used was unnecessary.[59] The disciplinary hearing officer found Bourne guilty as charged of both offenses and, noting that Bourne was already assigned to administrative segregation, imposed punishment in the form of restrictions on his commissary privileges.[60]   Bourne also forfeited 30 days of previously earned good-time credit.[61]   Bourne did not appeal from the conviction.[62]

---

[56]Id. at 23-39.

[57]Id. at 5.

[58]TDCJ Disciplinary Report and Hearing Record, Docket Entry No. 56-4, p. 3.

[59]Id.

[60]Id.

[61]Id.

[62]More Definite Statement, Docket Entry No. 9, p. 6.

## II.  **Standard of Review**

Defendants' motion is governed by Rule 56 of the Federal Rules of Civil Procedure.  Under this rule a reviewing court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2552 (1986).  A factual dispute is "material" only if its resolution in favor of one party "might affect the outcome of the suit under the governing law[.]"  Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505, 2510 (1986).  A dispute about a material fact is "genuine" only if the evidence "is such that a reasonable jury could return a verdict for the nonmoving party."  Id.

If the movant demonstrates the absence of a genuine issue of material fact, the burden shifts to the non-movant to "come forward with specific facts showing the existence of a genuine issue for trial."  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 106 S. Ct. 1348, 1356 (1986) (emphasis and internal quotation marks omitted).  In determining whether this burden has been met, the reviewing court must "construe all facts and inferences in the light most favorable to the nonmoving party."  Dillon v. Rogers, 596 F.3d 260, 266 (5th Cir. 2010) (quoting Murray v. Earle, 405 F.3d 278, 284 (5th Cir. 2005)).  However, a non-movant cannot avoid summary judgment simply by presenting "conclusory allegations and

denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation." Jones v. Lowndes Cty., Miss., 678 F.3d 344, 348 (5th Cir. 2012) (quoting TIG Ins. Co. v. Sedgwick James of Washington, 276 F.3d 754, 759 (5th Cir. 2002)); see also Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (a non-movant cannot demonstrate a genuine issue of material fact with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence).

The plaintiff proceeds pro se in this case. Courts construe pleadings filed by pro se litigants under a less stringent standard than those drafted by lawyers. See Haines v. Kerner, 92 S. Ct. 594, 596 (1972) (per curiam); see also Erickson v. Pardus, 127 S. Ct. 2197, 2200 (2007) ("A document filed pro se is 'to be liberally construed[.]'") (quoting Estelle v. Gamble, 97 S. Ct. 285, 292 (1976)). Nevertheless, "pro se parties must still brief the issues and reasonably comply with [federal procedural rules]." Grant v. Cuellar, 59 F.3d 523, 524 (5th Cir. 1995)(citations omitted). The Fifth Circuit has held that "[t]he notice afforded by the Rules of Civil Procedure and the local rules" is "sufficient" to advise a pro se party of his burden in opposing a summary judgment motion. Martin v. Harrison Cty. Jail, 975 F.2d 192, 193 (5th Cir. 1992) (per curiam).

## III. **Discussion**

### A. **Official Immunity Under the Eleventh Amendment**

To the extent that Bourne seeks monetary damages from the individual defendants in their official capacity as TDCJ employees, his claims must be dismissed because they are precluded by the Eleventh Amendment to the United States Constitution.[63]  Unless expressly waived, the Eleventh Amendment bars an action in federal court by a citizen of a state against his or her own state, including a state agency.  See Martinez v. Texas Dep't of Criminal Justice, 300 F.3d 567, 574 (5th Cir. 2002).

As a state agency, TDCJ is immune from a suit for money damages under the Eleventh Amendment.  See Talib v. Gilley, 138 F.3d 211, 213 (5th Cir. 1998).  The Eleventh Amendment also bars a recovery of money damages under 42 U.S.C. § 1983 from state employees in their official capacity.  See Oliver v. Scott, 276 F.3d 736, 742 (5th Cir. 2002); Aguilar v. Texas Dep't of Criminal Justice, 160 F.3d 1052, 1054 (5th Cir. 1998).  Because Bourne has sued all of the defendants for actions taken during the course of

---

[63]The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend XI.  Federal court jurisdiction is restricted by the Eleventh Amendment and the principle of sovereign immunity that it embodies.  See Seminole Tribe of Florida v. Florida, 116 S. Ct. 1114, 1122 (1996); see also Pennhurst State Sch. & Hosp. v. Halderman, 104 S. Ct. 900, 908-09 (1984) (explaining that the Eleventh Amendment acts as a jurisdictional bar to suit against a state in federal court).

their employment by TDCJ, Bourne's claims for monetary damages against the defendants in their official capacity are barred by the Eleventh Amendment. Accordingly, the defendants' motion for summary judgment on this issue will be granted.

## B. The Rule of <u>Heck v. Humphrey</u>

Bourne seeks monetary damages for a use of force that resulted in a disciplinary conviction and a loss of good-time credits. It is well established that a civil rights plaintiff may not recover damages based on allegations of "unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid," without first proving that the conviction or sentence has been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determinations, or called into question by a federal court's issuance of a writ of habeas corpus [under] 28 U.S.C. § 2254." <u>Heck v. Humphrey</u>, 114 S. Ct. 2364, 2372 (1994). A claim for damages that bears a relationship to a conviction or sentence that has not been so invalidated is not cognizable under 42 U.S.C. § 1983. <u>Id.</u> In this context, a "conviction" includes a prison disciplinary conviction that results in the loss of good-time credit. <u>See</u> <u>Edwards v. Balisok</u>, 117 S. Ct. 1584, 1589 (1997).

Bourne was convicted of tampering with his cell door and creating a disturbance in connection with the use of force that

occurred on November 21, 2014.[64] Arguing that success on his claims would not implicate the validity of his conviction for tampering with his cell door, Bourne contends that Heck does not apply.[65] Bourne does not dispute, however, that his excessive-force claim, which asserts that the use of force was unprovoked and unnecessary, would, if true, implicate the validity of his disciplinary conviction for creating the disturbance that resulted in the use of force. Because that conviction has not been overturned, the court is persuaded that Bourne's excessive-force claims against the defendants are barred by Heck. See DeLeon v. City of Corpus Christi, 488 F.3d 649, 656-57 (5th Cir. 2007) (holding that an excessive-force claim was barred by Heck where plaintiff's version of events was inconsistent with, and not separable from, the facts underlying his conviction); see also Brooks v. Evans, Civil No 5:11-154, 2012 WL 3956907, *6-9 (E.D. Tex. Aug. 1, 2012), report and recommendation adopted, 2012 WL 3956589 (E.D. Tex. Sept. 10, 2012); Orange v. Ellis, Civil No. 08-224, 2009 WL 454253, *4-5 (M.D. La. Feb. 23, 2009), aff'd, 348 F. App'x 69 (5th Cir. 2009); Hadnot v. Butler, Civil No. H-08-1304, 2008 WL 4200815, *3 (S.D. Tex. Sept. 9, 2008), aff'd, 332 F. App'x 206 (5th Cir. 2009). Accordingly, those claims are not cognizable under § 1983 and must be dismissed with prejudice. See Edwards, 117 S. Ct. at 1589

---

[64]TDCJ Disciplinary Report and Hearing Record, Docket Entry No. 56-4, p. 3.

[65]Plaintiff's Response, Docket Entry No. 60, p. 13.

(emphasizing that claims barred by <u>Heck</u> are not cognizable under §
1983 and "should be dismissed"); <u>Johnson v. McElveen</u>, 101 F.3d 423,
424 (5th Cir. 1996) (explaining that claims barred by Heck are
"dismissed with prejudice to their being asserted again until the
<u>Heck</u> conditions are met"). Alternatively, Bourne's claims must be
dismissed because they lack merit for reasons explained below.

## C.    Qualified Immunity

The defendants argue that Bourne fails to show that excessive
force was used in violation of the Eighth Amendment. The
defendants argue further that Bourne fails to establish that any
constitutional violation occurred or that their actions were
objectively unreasonable under the circumstances. The defendants
maintain, therefore, that they are entitled to qualified immunity.

"The doctrine of qualified immunity protects government
officials 'from liability for civil damages insofar as their
conduct does not violate clearly established statutory or
constitutional rights of which a reasonable person would have
known.'" <u>Pearson v. Callahan</u>, 129 S. Ct. 808, 815 (2009) (quoting
<u>Harlow v. Fitzgerald</u>, 102 S. Ct. 2727, 2738 (1982)). This is an
"exacting standard," <u>City & Cty. of San Francisco v. Sheehan</u>, 135
S. Ct. 1765, 1774 (2015), that "protects 'all but the plainly
incompetent or those who knowingly violate the law.'" <u>Mullenix v.
Luna</u>, 136 S. Ct. 305, 308 (2015) (quoting <u>Malley v. Briggs</u>, 106 S.
Ct. 1092, 1096 (1986)). A plaintiff seeking to overcome qualified

immunity must satisfy a two-prong inquiry by showing: "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." Ashcroft v. al-Kidd, 131 S. Ct. 2074, 2080 (2011) (citation omitted). If the plaintiff satisfies both prongs of this inquiry, the court then asks whether qualified immunity is nevertheless appropriate because the official's actions were objectively reasonable in light of law that was clearly established when the disputed action occurred. See Brown v. Callahan, 623 F.3d 249, 253 (5th Cir. 2010). "Whether an official's conduct was objectively reasonable is a question of law for the court, not a matter of fact for the jury." Id. (citation omitted). "An official's actions must be judged in light of the circumstances that confronted him and the facts that were available to him, without the benefit of hindsight." Id. (citation omitted).

As this standard reflects, "[a] good-faith assertion of qualified immunity alters the usual summary judgment burden of proof, shifting it to the plaintiff to show that the defense is not available." King v. Handorf, 821 F.3d 650, 653-54 (5th Cir. 2016) (internal quotation marks and citations omitted). "The plaintiff must rebut the defense by establishing that the official's allegedly wrongful conduct violated clearly established law and that genuine issues of material fact exist regarding the reasonableness of the official's conduct." Id. at 654 (quoting

_Gates v. Texas Dep't of Protective & Regulatory Servs._, 537 F.3d 404, 419 (5th Cir. 2008)). "To negate a defense of qualified immunity and avoid summary judgment, the plaintiff need not present 'absolute proof,' but must offer more than 'mere allegations.'" _Id._ (quoting _Manis v. Lawson_, 585 F.3d 839, 843 (5th Cir. 2009)).

A reviewing court may consider the steps of the qualified immunity analysis in any sequence. _See Pearson_, 129 S. Ct. at 818; _see also Tolan v. Cotton_, 134 S. Ct. 1861, 1866 (2014). In this case, the court begins by examining whether the plaintiff establishes a constitutional violation of the Eighth Amendment.

**D.    Claims of Excessive Force Under the Eighth Amendment**

Claims of excessive use of force in the prison context are governed by the Eighth Amendment, which prohibits cruel and unusual punishment, _i.e._, the "unnecessary and wanton infliction of pain." _Wilson v. Seiter_, 111 S. Ct. 2321, 2323 (1991) (quoting _Estelle v. Gamble_, 97 S. Ct. 285, 291 (1976)). Not every malevolent touch by a prison guard gives rise to a constitutional violation under the Eighth Amendment. _See Hudson v. McMillian_, 112 S. Ct. 995, 1000 (1992) (citing _Johnson v. Glick_, 481 F.2d 1028, 1033 (2d Cir. 1973) ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights.")). The Constitution excludes from recognition _de minimis_ uses of physical force, provided that the use of force is not of a sort "'repugnant to the conscience of

mankind.'" <u>Hudson</u>, 112 S. Ct. at 1000 (citation and quotation omitted).

To prevail on an excessive-use-of-force claim under the Eighth Amendment, a plaintiff must establish that force was not "applied in a good-faith effort to maintain or restore discipline, [but] maliciously and sadistically to cause harm." <u>Eason v. Holt</u>, 73 F.3d 600, 601-02 (5th Cir. 1996) (citing <u>Hudson</u>, 112 S. Ct. at 998; and <u>Jackson v. Culbertson</u>, 984 F.2d 699 (5th Cir. 1993)). Relevant factors to consider in evaluating an excessive-use-of-force claim include: (1) the extent of the injury suffered, (2) the need for the application of force, (3) the relationship between the need and the amount of force used, (4) the threat reasonably perceived by the responsible officials, and (5) any efforts made to temper the severity of a forceful response. <u>See</u> <u>Hudson</u>, 112 S. Ct. at 999; <u>Gomez v. Chandler</u>, 163 F.3d 921, 923 (5th Cir. 1999). Each of these factors is considered briefly below.

### 1. Extent of Injury

As noted above, the nurse who examined Bourne immediately after the use of force documented a small laceration above Bourne's left eye and swelling near his right eye, but no other injuries apart from minor abrasions on his chest and back.[66] Although Bourne claims that Officer Weaver "sexually assaulted" him by inserting

---

[66]Use of Force Video, Docket Entry No. 58, video clip 2 at 15:30-21:00.

his finger into his anus during the altercation, Bourne made no mention of such an assault to the nurse who was treating him and the record does not document any injury consistent with the alleged sexual assault.[67] The medical records and the video show that Bourne was alert and coherent after the incident and that he had no difficulty walking back to his cell.[68] Shortly after the use of force occurred, x-rays were taken of Bourne's face, confirming that his nose was not fractured.[69] Medical records reflect that Bourne was treated at the local hospital for complaints of a concussion, but CT scans of his face, head, and neck were all negative.[70] The treatment providers noted that Bourne was "[l]aughing and talking" during the examination, therefore, he was returned to the unit without any treatment.[71]

This factor favors the defendants because the video and the medical records establish that Bourne's injuries were minor. To the extent that Bourne complains primarily of soreness and burning from his exposure to a chemical agent, he was promptly treated in the infirmary and he does not establish that he suffered anything

---

[67]Id. at 15:30; see also Use of Force Nursing Note, Docket Entry No. 56-3, p. 3 (noting that Bourne denied any injuries except to his face).

[68]Use of Force Video, Docket Entry No. 58, video clip 2 at 21:00-32:55; see also Use of Force Nursing Note, Docket Entry No. 56-3, p. 3 (noting that Bourne was "alert and oriented x3").

[69]Radiology Report, Docket Entry No. 56-3, p. 19.

[70]Hospital/ER Discharge Assessment, Docket Entry No. 56-3, p. 20.

[71]Id. at 21.

more than de minimis injury as a result of his altercation with the
defendants.  See Siglar v. Hightower, 112 F.3d 191, 193 (5th Cir.
1997) (holding that a sore, bruised ear lasting for three days was
de minimis and would not support an excessive force claim);  see
also Bradshaw v. Unknown Lieutenant, 48 F. App'x 106, 2002 WL
31017404, at *1 (5th Cir. 2002) (holding that "burning eyes and
skin for approximately 24 hours, twitching of his eyes, blurred
vision, irritation of his nose and throat, blistering of his skin,
rapid heartbeat, mental anguish, shock and fear" as the result of
exposure to a chemical agent was de minimis);  Wyatt v. Shaw, 62
F.3d 394, 1995 WL 450120 (5th Cir. 1995) (unpublished) (upholding
the dismissal of an excessive force claim where the only injury
alleged was exposure to the effects of a chemical agent)(citing
Jackson v. Culbertson, 984 F.2d 699, 700 (5th Cir. 1993)).

The use of force video also contradicts Bourne's claim that
the officers brutally assaulted him in the manner he describes in
his pleadings.  Bourne argues, however, that he suffered a
concussion and lost consciousness due to the serious injuries that
he sustained during the use of force.[72]  In support, Bourne has
submitted unsworn statements from other offenders, who claim that
they witnessed a brutal beating that caused "very severe"

---

[72]Plaintiff's Declaration of Disputed Facts, Docket Entry No.
60, p. 37.

-22-

injuries.[73] The court is required to draw inferences in favor of the nonmovant when the defense of qualified immunity has been asserted. See Tolan v. Cotton, 134 S. Ct. 1861, 1866 (2014). It is well established, however, that "a plaintiff's version of the facts should not be accepted for purposes of qualified immunity when it is 'blatantly contradicted' and 'utterly discredited' by video recordings." Hanks v. Rogers, 853 F.3d 738, 744 (5th Cir. 2017) (citing Curran v. Aleshire, 800 F.3d 656, 664 (5th Cir. 2015) (quoting Scott v. Harris, 127 S. Ct. 1769, 1776 (2007)). Because the video and the medical records refute the statements provided by Bourne,[74] his evidence does not raise a genuine issue of material fact regarding the extent of his injury.

2. Need for Force

The use of a chemical agent and force, if necessary, was authorized by Captain Vincent because Bourne refused repeated

---

[73]Witness Statement of Levy Lacombe (TDCJ #851206), Docket Entry No. 60, p. 43; Witness Statement of David Hickman (TDCJ #1730048), Docket Entry No. 60, p. 41; Statement of Andres Urbina (TDCJ #711985), Docket Entry No. 60, p. 45; Statement from Unidentified Offender, Docket Entry No. 60, p. 46 (inmate is not identified by TDCJ number and his signature is illegible).

[74]Bourne claims that inmates across from his cell witnessed the use of force. See Plaintiff's Response, Docket Entry No. 60, p. 23. The video shows, however, that the cell in which the use of force took place was completely dark; moreover, Lieutenant Gunnels stood in the doorway to the cell for most of the use of force, narrating events for the video camera, which also blocked the view of offenders assigned to nearby cells. See Use of Force Video, Docket Entry No. 58, video clip 2 at 00:01 -12:50. Because the video refutes the accounts given by the other offenders, their statements are of little value. See Plaintiff's Response, Docket Entry No. 60, pp. 41-46.

orders to relinquish control of his food-tray slot, which he had jammed open.[75] The evidence further shows that even after a chemical agent was deployed, Bourne remained openly defiant and continued to disobey repeated orders to relinquish control of his cell door.[76] Bourne does not dispute this evidence, which shows that he created a substantial disturbance that required the use of force to quell.

Preserving institutional order and discipline is a central objective of sound prison administration. See Bell v. Wolfish, 99 S. Ct. 1861, 1878 (1979) ("[M]aintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights of both convicted prisoners and pretrial detainees."). Use of a chemical agent and physical force are considered appropriate where a recalcitrant inmate refuses to obey repeated orders in the correctional setting. See Soto v. Dickey, 744 F.2d 1260, 1267 (7th Cir. 1984) ("If it is an order that requires action by the institution, and the inmate cannot be persuaded to obey the order, some means must be used to compel compliance, such as a chemical agent or physical force."). Bourne, who makes no real effort to dispute the contents of the video, fails to show that the use of

---

[75]Use of Force Report, Docket Entry No. 56-2, p. 6; Use of Force Video, Docket Entry No. 58, video clip 1 at 00:01-00:30.

[76]Use of Force Video, Docket Entry No. 58, video clip 2 at 00:10-04:30.

force was not necessary to gain his compliance.  Accordingly, this factor also favors the defendants.

   3.   <u>Need for Force and the Amount of Force Used</u>

   Bourne contends that the amount of physical force used by the officers was unnecessary because he was guilty, at most, of violating prison rules by tampering with his cell door.  This assertion is refuted by the video, which confirms that Bourne disobeyed repeated orders to relinquish control of the cell door and that he created a significant disturbance by continuing to disregard those orders after the chemical agent was deployed.[77] Contrary to Bourne's claim that the use of force was unprovoked, the video shows that Bourne was highly agitated, cursing loudly, and taunting the officers to enter his cell as he continued to disobey orders.[78]  The video also documents that the struggle to subdue Bourne was brief, lasting no more than five minutes from the time officers entered the cell until they escorted him out in full arm and leg restraints with only minor injuries.[79]

   It is well established that the use of a chemical agent to prevent riots or escapes or to subdue recalcitrant prisoners does not constitute cruel and unusual punishment.  <u>See</u> <u>Clemmons v. Greggs</u>, 509 F.2d 1338, 1340 (5th Cir. 1975) (citing <u>Landman v.</u>

―――――――――――――

   [77]Use of Force Video, Docket Entry No. 58, clip 2 at 00:37-4:05.
   [78]<u>Id.</u>
   [79]<u>Id.</u> at 8:29-12:45.

Peyton, 370 F.2d 135 (4th Cir. 1966)); see also Baldwin v. Stalder, 137 F.3d 836, 841 (5th Cir. 1998) (holding that the use of mace to quell a disturbance on a prison bus was not an excessive use of force). When the use of a chemical agent was not sufficient to gain Bourne's compliance, the use of physical force to place him in restraints and remove him from his cell was justified. Because the video and the medical records further establish that the extraction was accomplished in less than five minutes and resulted in only minor injuries, Bourne does not show that the amount of force used was excessive to the need. Accordingly, this factor also favors the defendants.

### 4. Reasonably Perceived Threat

The fourth factor looks at the threat reasonably perceived by the responsible officials, which in this case included Lieutenant Gunnels and the five-man team consisting of Officers Howard, Weaver, LeBlanc, Price, and Ajisefini. The use of force in this case occurred at the Estelle High Security Unit, where Bourne was confined with other problem offenders in administrative segregation.[80] As the video reflects, the officers were aware that

---

[80]Medical records show that Bourne was a 28-year-old inmate who stood six feet tall and weighed 221 pounds at the time that the use of force occurred. See Use of Force Nursing Note, Docket Entry No. 56-3, p. 3. Bourne, whose underlying conviction was for aggravated assault with a deadly weapon, discloses in his pleadings that he had a record of disciplinary infractions while incarcerated, including fighting with other offenders, possessing a weapon, and other violations. See More Definite Statement, Docket Entry No. 9, (continued...)

Bourne had refused repeated orders to relinquish control of his cell door. Despite Gunnels express warning that officers would enter Bourne's cell and extract him if he persisted in refusing to comply, Bourne continued to disobey and became belligerent. The video confirms that Bourne was highly agitated as he shouted obscenities and dared the officers to enter his darkened cell.[81] As the officers waited for the cell door to be pried open, the video shows Bourne standing at the doorway in anticipation of a confrontation, yelling at the officers, and blocking their entry into the cell.[82] Because of Bourne's aggressive demeanor and his custodial status as an offender assigned to administrative segregation, the officers reasonably perceived Bourne's actions as a threat to their safety as well as to institutional order and security, necessitating the use of force. Therefore, this factor does not support a finding that excessive force was used.

Bourne argues that he did not pose any threat to the officers and that no force was necessary because he was barricaded in his cell. Courts have recognized, however, that disobeying orders poses a threat to the order and security of the prison as an institution. See Minix v. Blevins, Civil Action No. 6:06-306, 2007 WL 1217883, at *25 (E.D. Tex. April 23, 2007) (citing Soto v.

---

[80](...continued)
pp. 6-7, 13.

[81]Use of Force Video, Docket Entry No. 58, video clip 2 at 00:35-07:50.

[82]Id. at 07:40-07:55.

Dickey, 744 F.2d 1260, 1270-71 (7th Cir. 1984)). Courts have also recognized that "the use of mace on an unruly or 'recalcitrant' prison inmate, though confined in his cell, is not plainly per se unconstitutional" as cruel and unusual punishment. Bailey v. Turner, 736 F.2d 963, 970 (4th Cir. 1984); see also Thomas v. Comstock, 222 F. App'x 439, 442, 2007 WL 807037, at *2 (5th Cir. 2007) (citing Jones v. Shields, 207 F.3d 491, 495-96 (8th Cir. 2000) (correctional officer's use of a pepper-based chemical spray that resulted in de minimis injury was not "repugnant to the conscience of mankind" when used to subdue a "recalcitrant prisoner" locked in his cell or in handcuffs)); Soto, 744 F.2d at 1270 ("The Supreme Court has never held, nor have we or any other court of appeals, so far as we can determine, that the use of tear gas or a chemical agent is a per se violation of the Eighth Amendment, whether an inmate is locked in his cell or not."); Rios v. McBain, Civ. No. A504CV84, 2005 WL 1026192, at *7 (E.D. Tex. April 28, 2005) (noting that "open defiance of orders plainly poses a threat to the security of the institution, regardless of whether or not the defiance is emanating from within a locked cell").

   5.   Efforts to Temper the Forceful Response

The video confirms that the defendants went to great lengths to avoid using force. After Bourne refused repeated orders to relinquish control of his cell door, Lieutenant Gunnels requested authorization from a ranking official to use a chemical agent and

-28-

force, if necessary, before assembling a five-man team of officers, including a video-camera operator, to execute a use of force pursuant to the TDCJ Use of Force Plan.[83] Gunnels warned Bourne multiple times that he was about to use a chemical agent if Bourne did not relinquish control of his cell door.[84] The use of chemical spray was short in duration, lasting no more than five seconds.[85] The officers then waited more than seven minutes before entering the cell, while Bourne continued to disobey orders and became belligerent.[86] The actual use of force inside the cell was brief, taking no more than five minutes from the time the officers entered until they escorted Bourne from the cell in full restraints. Had Bourne complied at any point with the orders given by Lieutenant Gunnels, the use of force would not have been necessary. Under these circumstances, steps were plainly taken to eliminate or reduce the need for force. Therefore, this factor also favors the defendants.

A review of the five above-referenced factors from Hudson v. McMillian shows that the defendants applied limited force after they reasonably perceived that Bourne had disobeyed repeated orders, and that the force used was done in a good faith effort to

---

[83]Use of Force Video, Docket Entry No. 58, video clip 1 at 00:01-00:30.

[84]Id., video clip 2 at 00:01-00:25.

[85]Id. at 00:30-00:35.

[86]Id. at 00:35-07:50.

maintain or restore discipline and not maliciously or sadistically to inflict pain or to use force in excess of the need. Consideration of these same factors supports a finding that the officers' actions were objectively reasonable in light of clearly established law outlined in <u>Hudson</u>. The objective visual evidence presented in the video, in particular, confirms that the officers executed a use of force in compliance with standard operating procedures and overwhelmingly negates Bourne's characterization of the incident as an unprovoked assault. The record does not otherwise contain admissible evidence to support Bourne's version of the events or that would tend to show that the officers violated the Eighth Amendment by using excessive force in a manner that was cruel and unusual. Accordingly, Gunnels, Howard, Weaver, LeBlanc, Price, and Ajisefini are entitled to qualified immunity from Bourne's claim that excessive force was used in violation of the Eighth Amendment.

## E.    Eighth Amendment Bystander Liability

Alleging that Officers Howard, Weaver, and Leblanc used excessive force while extracting him from his cell, Bourne contends that Lieutenant Gunnels, Sergeant Applewhite, and Officer Ford violated his rights under the Eighth Amendment by failing to intervene and stop the use of excessive force.[87] An officer may be

---

[87]Complaint, Docket Entry No. 1, pp. 3-4; Supplemental Complaint, Docket Entry No. 28, p. 3.

subject to "bystander liability" under 42 U.S.C. § 1983 where the officer "(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent harm; and (3) chooses not to act." <u>Whitley v. Hanna</u>, 726 F.3d 631, 646 (5th Cir. 2013); <u>Hale v. Townley</u>, 45 F.3d 914, 919 (5th Cir. 1995) ("[A]n officer who is present at the scene and does not take reasonable measures to protect a suspect from another officer's use of excessive force may be liable under section 1983."). Because Bourne has not shown that excessive force was used in violation of the Eighth Amendment, he cannot demonstrate that Lieutenant Gunnels, Sergeant Applewhite, or Officer Ford violated his rights by failing to intervene. <u>See Davis v. Cannon</u>, 91 F. App'x 327, 329, 2004 WL 362233, at *1 (5th Cir. 2004) (per curiam) (concluding that where the alleged actions did not constitute excessive force, bystanders are not liable for failing to intervene); <u>see also</u> <u>Hicks v. Page</u>, Civ. No. H-08-2486, 2008 WL 793684, * 7 (S.D. Tex. March 4, 2010) (dismissing as legally frivolous a claim of bystander liability for failure to intervene where there was no showing that excessive force was used in violation of the Eighth Amendment).

Absent a showing that there was an excessive use of force to stop, Gunnels, Applewhite, and Ford are entitled to qualified immunity from Bourne's Eighth Amendment claims for bystander liability.

**F.   Eighth Amendment Conditions of Confinement**

Bourne alleges that Sergeant Applewhite violated his rights under the Eighth Amendment by forcing him to return to a cell that was contaminated with chemical spray.  To demonstrate that prison conditions violate the Eighth Amendment, an inmate must meet the following requirements:  (1) an objective requirement showing that the condition is "so serious as to 'deprive prisoners of the minimal civilized measure of life's necessities,' as when it denies the prisoner some basic human need;" and (2) a subjective requirement, which mandates a showing that prison officials have been "'deliberately indifferent' to inmate health or safety." Woods v. Edwards, 51 F.3d 577, 581 (5th Cir. 1995) (citing Farmer v. Brennan, 511 U.S. 825, 834, 114 S. Ct. 1970, 1977 (1994)) (citations omitted).  A prison official acts with deliberate indifference "only if he knows that inmates face a substantial risk of serious harm and [he] disregards that risk by failing to take reasonable measures to abate it." Farmer, 114 S. Ct. at 1984.

The video of the use of force shows that Bourne and the officers who were escorting him were detained for several minutes in the hallway while Bourne's cell (cell 113) was decontaminated.[88] Bourne was not placed in cell 113 until after Lieutenant Gunnels

---

[88]Use of Force Video, Docket Entry No. 58, video clip 2 at 25:18-30:00.

announced on the video that it had been cleaned.[89] After Officers returned Bourne to the cell, he did not voice any complaint about the cell's condition.[90] Bourne does not allege any specific facts showing that, under the objective requirement, he was exposed to a condition that was sufficiently hazardous as to be inhumane. See Woods, 51 F.3d at 581; see also Davis v. Cannon, 91 F. App'x 327, 2004 WL 362233, at *1 (5th Cir. 2004) (affirming the dismissal on summary judgment of an inmate's claim that he was subjected to a hazardous condition by returning him to the same cell where a chemical agent remained in the air). Likewise, Bourne does not allege facts showing that Sergeant Applewhite had knowledge of the alleged condition, but acted with the requisite deliberate indifference after Bourne was returned to his cell. See Farmer, 114 S. Ct. at 1984. Because Bourne does not raise a genuine issue of material fact, he fails to overcome the defense of qualified immunity and the defendants are entitled to summary judgment on his claim concerning the conditions of confinement.

## G. Retaliation

Finally, Bourne alleges that Officer Weaver violated his constitutional rights under the First Amendment by inserting a finger into Bourne's anus during the use of force in retaliation for a grievance that he filed against Weaver previously on April

---

[89]Id. at 29:55-30:00, 31:00.
[90]Id. at 31:00-34:40.

28, 2014.[91] To the extent that the claim stems from disciplinary measures taken by prison officials, Bourne's allegation of retaliation is "regarded with skepticism." <u>Woods v. Smith</u>, 60 F.3d 1161, 1165 (5th Cir. 1995). "To prevail on a claim of retaliation, a prisoner must establish (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation," <u>i.e.</u>, that the retaliatory act was motivated by the retaliatory intent. <u>McDonald v. Steward</u>, 132 F.3d 225, 231 (5th Cir. 1998).

The record does not support Bourne's claim that Officer Weaver sexually assaulted him. Although Bourne complained during his physical that officers grabbed his genitals during the use of force, Bourne did not report any other injury.[92] Thus, the video contradicts Bourne's claim that the alleged retaliatory adverse act occurred and Bourne makes no effort to explain this inconsistency. Because the record also establishes that the use of force was necessitated by Bourne's recalcitrant non-compliance with direct orders, and was not arbitrarily or independently initiated by Officer Weaver, Bourne does not demonstrate the requisite retaliatory intent or causation. <u>See</u> <u>Johnson v. Rodriguez</u>, 110

---

[91]Complaint, Docket Entry No. 1, p. 6.

[92]Use of Force Video, Docket Entry No. 58, video clip 2 at 12:50-22:10; <u>see</u> <u>also</u> Use of Force Nursing Note, Docket Entry No. 56-3, p. 3 (noting that Bourne denied any injuries except to his face).

F.3d 299, 310 (5th Cir. 1997). Bourne's conclusory allegations to the contrary are not otherwise sufficient to overcome the defense of qualified immunity or the defendants' properly supported motion for summary judgment. See Woods, 60 F.3d at 1166; see also Eason v. Thaler, 73 F.3d 1322, 1325 (5th Cir. 1996) ("[M]ere conclusory allegations are not competent summary judgment evidence, and such allegations are insufficient, therefore, to defeat a motion for summary judgment."). Because Bourne has not demonstrated that a constitutional violation occurred, Officer Weaver is entitled to qualified immunity and summary judgment on the retaliation claim.

Based on this record, Bourne has not established a constitutional violation or overcome the defendants' entitlement to qualified immunity from his claims. Because Bourne has not raised a genuine issue of material fact for trial, Defendant's Motion will be granted.

### IV. **Conclusion and Order**

Accordingly, it is **ORDERED** that Defendants' Motion for Summary Judgment (Docket Entry No. 56) is **GRANTED** and this action is will be dismissed with prejudice.

The Clerk shall provide a copy of this Memorandum Opinion and Order to the parties.

**SIGNED** at Houston, Texas, on this the 7 th day of June, 2017.

SIM LAKE
UNITED STATES DISTRICT JUDGE