IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit
**FILED**
April 16, 2019
Lyle W. Cayce
Clerk

United States Courts
Southern District of Texas
FILED
*May 08, 2019*
David J. Bradley, Clerk of Court

No. 17-20418

**4:16-cv-515**

MICHAEL BOURNE,

   Plaintiff–Appellant,

versus

MICHAEL GUNNELS, Lieutenant; CARLOS A. APPLEWHITE, Sergeant;
ANTHONY HOWARD, JR., Sergeant;
ROLAND C. WEAVER, Correctional Officer;
ROBERT LEBLANC, Correctional Officer; ERNEST PRICE;
TAJUDEEN AJISEFINI; SASCHA FORD,

   Defendants–Appellees.

Appeal from the United States District Court
for the Southern District of Texas

Before KING, SMITH, and WILLETT, Circuit Judges.
JERRY E. SMITH, Circuit Judge:

   Michael Bourne, proceeding *pro se*, sued prison officers under 42 U.S.C. § 1983 for excessive force, failure to intervene, deliberate indifference, and retaliation claims arising from use of force during his confinement. The district

No. 17-20418

court granted summary judgment to defendants, determining that (1) Bourne's claims for monetary damages against the defendants in their official capacities are precluded by the Eleventh Amendment, (2) his excessive-force claims are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994), and its progeny, or, alternatively, (3) defendants are entitled to qualified immunity ("QI") from his claims because he did not establish a constitutional violation.

Bourne appeals on his excessive-force claim, maintaining that *Heck* has "no bearing" and that the court "improperly evaluated the evidence in a light most favorable to [d]efendants" and "disregarded [his] evidence creating a material dispute of fact" on QI. We reverse and remand.

I.

On November 21, 2014, Bourne was standing at his cell door asking to speak with a Captain Norman regarding some money removed from his inmate trust fund account. Bourne had taken control of the food-tray slot to his cell "and refused to relinquish it," jamming the slot with a sheet and towels, covering the windows to his cell with a sheet, and turning off his cell's light. Consequently, a supervisory official, Captain Vincent, authorized a use of force to regain control of the door. Lieutenant Michael Gunnels assembled a five-person team to use a chemical agent and force, if necessary, to extract Bourne and regain control of the door. Gunnels' team consisted of Officers (1) Anthony Howard, Jr., (2) Ernest Price, (3) Tajudeen Ajisefini, (4) Robert LeBlanc, and (5) Roland Weaver. Officer Sascha Ford recorded the use of force.

Immediately upon arriving at the cell, Gunnels, at least three times, ordered Bourne to surrender control of the food-tray slot, warning that he would use a chemical agent and that officers would enter the cell if Bourne did not acquiesce. Bourne failed to comply, so Gunnels employed the chemical agent, spraying it through the open food-tray slot for five seconds and using

2

No. 17-20418

about half a canister. While the officers waited for the chemical agent to take effect for about five minutes, Bourne yelled, cursed, taunted the officers, and invited them to enter the cell and beat him.

Bourne refused to relinquish control of the food-tray slot and cursed at the officers. They tried to open the cell door, but Bourne had jammed it shut. When the officers finally managed to open it about seven minutes after deploying the chemical agent, Bourne did not retreat from the door but attempted to block the lead officer from entering. The officers entered to restrain Bourne, repeatedly ordering him to "stop resisting." From the video, it is impossible to discern what occurred during the actual use of force inside the cell because the lights are off and Gunnels stands in the cell doorway during much of the altercation.

Within five minutes of entering the cell, the officers subdued Bourne and restrained his arms and legs. He exited the cell under his own power, and the officers escorted him to a nearby infirmary room for a use-of-force physical examination by a healthcare provider. Bourne was wearing a pair of white shorts covered in orange chemical spray and a pair of shoes and was bleeding from a small cut above one eye.

During the medical examination, Bourne complained that an officer had struck him in the face and grabbed his genitals. The nurse noted a scratch above Bourne's left eye, swelling near his eyes, and minor abrasions to his back consistent with being taken down to the floor. Bourne refused to open his eyes, stating that they were swollen from the chemical agent and an officer's having gouged them. When Gunnels asked Bourne about other injuries, Bourne complained that his testicles were burning from the chemical agent on his shorts.

As he was escorted from the infirmary room to his cell, Bourne continued to yell and curse at the officers, inciting other inmates to do the same. While

3

No. 17-20418

Bourne and the officers waited in the hallway for his cell to be decontaminated, he joked with another inmate who was yelling at the officers. Following the decontamination, officers returned Bourne to his cell. In the video, no chemical agent is visible on the door, the closed food-tray slot, the cell walls, or the floor. Finally, Gunnels instructed Bourne to decontaminate himself by washing with cold water and gave him oral and written instructions concerning his opportunity to provide a statement about the use of force.

Defendants contend that after entering the cell, they "used the minimum amount of force necessary to gain compliance," which bore "a direct relationship to the level of resistance presented by [Bourne] as well as the threat he presented due to his size and history of non-compliance." In the use-of-force report reviewing the incident, defendants uniformly state that Bourne resisted them and fought the team. Conversely, Bourne focuses on the force he asserts the officers used after he was "handcuffed & shackled" on his cell's floor and "not a threat." He maintains that defendants used excessive force at this point by "physically & sexually assaulting" him, punching him, squeezing and twisting his genitals, and sticking a finger into his anus.

II.

Bourne sued Gunnels, Sergeant Carlos Applewhite, Howard, Weaver, LeBlanc, Price, Ajisefini, and Ford under § 1983 seeking compensatory and punitive damages for excessive force, failure to intervene, deliberate indifference, and retaliation. Specifically, Bourne alleged that (1) Gunnels sprayed him with an entire can of chemical agent, ordered the other officers to continue the use of force after Bourne submitted, and did not stop an officer from returning Bourne to his cell contaminated with chemical agent; (2) Howard punched him in the face and body, "slammed" his face into the floor, rubbed his face in the chemical agent on the floor, and when he was restrained, gouged

4

his eyes and punched him in the head; (3) Weaver punched him in the face and body before he was restrained, and after he was restrained, punched him in the head and back, stuck a gloved finger covered in chemical agent into his anus through his boxer shorts, and retaliated against him for filing a sexual harassment grievance against Weaver; (4) LeBlanc punched him in the face and body before he was restrained, and after he was restrained, "grabbed [his] genitals through [his] boxers, and roughly squeezed and twisted them"; (5) Price and Ajisefini punched him in the face and body before he was restrained and continued to do so after he was restrained; (6) Applewhite did not intervene when the other officers used excessive force, returned him to his cell despite it being contaminated with chemical agent, refused to give him cleaning supplies, and did not allow him to shower; and (7) Ford failed to intervene and did not record the entire incident.

Defendants moved for summary judgment, contending that (1) they had immunity from Bourne's claims in their official capacities under the Eleventh Amendment, (2) *Heck* bars Bourne's § 1983 claims, and (3) they were entitled to QI on all claims. Bourne opposed the motion, which the district court granted.

First, the court determined that Bourne's claims seeking monetary damages against defendants in their official capacities were precluded by the Eleventh Amendment, which "bars an action in federal court by a citizen of a state against his or her own state, including a state agency." Second, the court held that *Heck* and its progeny bar Bourne's excessive-force claims because his success on those claims necessarily would imply the invalidity of his disciplinary conviction for creating a disturbance that resulted in the use of force.

Alternatively, the court held that defendants were entitled to QI on the excessive-force claims. Examining the summary judgment evidence and

5

No. 17-20418

methodically analyzing the five factors from *Hudson v. McMillian*, 503 U.S. 1 (1992), the court found that "defendants applied limited force" in response to Bourne's repeated flouting of orders "and that the force used was done in a good faith effort to maintain or restore discipline and not maliciously or sadistically to inflict pain or to use force in excess of the need." Furthermore, under the same factors, defendants' actions were objectively reasonable. Bourne thus failed to show "that excessive force was used in violation of the Eighth Amendment."

Third, the court determined that because Bourne could not show excessive force, he also could not demonstrate liability for failure to intervene to stop the use of excessive force. Fourth, the court found that defendants' video evidence contradicted Bourne's Eighth Amendment conditions-of-confinement claim, namely, that Applewhite returned him to his cell while it was still contaminated with chemical agent. The video shows that Bourne waited in the hallway with the officers while his cell was cleaned off-camera and was returned to that cell only after Gunnels announced that it was decontaminated. No orange chemical agent is visible on the door, food-tray slot, cell walls, or floor recorded in the video. Therefore, the court concluded, Bourne failed to raise a genuine dispute of material fact to overcome defendants' assertion of QI on this claim.

Fifth, the court determined that "[t]he record does not support Bourne's claim that" Weaver violated his First Amendment rights by retaliating against him for filing a grievance against Weaver. Bourne did not report Weaver's alleged insertion of his finger into Bourne's anus during the post-use of force medical examination, and the record establishes that "Bourne's recalcitrant non-compliance with direct orders" required use of force. Consequently, Bourne did not establish a constitutional violation, and his "conclusory

No. 17-20418

allegations to the contrary" regarding retaliatory intent or causation were insufficient to overcome QI.

## III.

On appeal, Bourne challenges only the summary judgment on his excessive force claims on the grounds that they are barred by *Heck* and that defendants are entitled to QI. We review "de novo a . . . summary judgment, applying the same standard as the district court." *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 328 (5th Cir. 2017) (per curiam).

"A qualified immunity defense alters the usual summary judgment burden of proof." *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010). Once a government official asserts QI, the burden shifts to the plaintiff to "rebut the defense by establishing that the official's allegedly wrongful conduct violated clearly established law and that genuine issues of material fact exist regarding the reasonableness of the official's conduct." *Gates v. Tex. Dep't of Protective & Regulatory Servs.*, 537 F.3d 404, 419 (5th Cir. 2008). "[A]ll inferences are drawn in [the plaintiff's] favor." *Brown*, 623 F.3d at 253. But "a plaintiff's version of the facts should not be accepted for purposes of [QI] when it is 'blatantly contradicted' and 'utterly discredited' by video recordings." *Hanks v. Rogers*, 853 F.3d 738, 744 (5th Cir. 2017) (citation omitted); *see also Scott v. Harris*, 550 U.S. 372 (2007).

Bourne appeals *pro se*. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (internal quotation marks and citation omitted). "Although we liberally construe the briefs of pro se appellants, we also require that arguments must be briefed to be preserved." *Yohey v. Collins*, 985 F.2d 222, 225 (5th Cir. 1993) (citation omitted).

7

No. 17-20418

IV.

A plaintiff asserting a § 1983 claim may not "recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid," unless he "prove[s] that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck*, 512 U.S. at 486–87. *Heck*'s principle extends to disciplinary convictions.[1] *Heck*, however, "is not . . . implicated by a prisoner's challenge that threatens no consequence for his [underlying] conviction or the duration of his sentence."[2]

Bourne contends that *Heck* has "no bearing on this case" because he has "no interest in good time credits because of his incarceration for an aggravated charge." Liberally construing Bourne's appellate contentions, and reviewing this question of law *de novo*, *United States v. Martinez*, 151 F.3d 384, 390 (5th Cir. 1998), we determine that *Heck* and its progeny do not bar Bourne's excessive force claims.

Bourne was convicted of tampering with his cell door and creating a disturbance in connection with the use of force, resulting in a forfeiture of thirty days' good-time credit. The district court determined that *Heck* bars the excessive-force claims because, "if true, [they would] implicate the validity of his disciplinary conviction for creating the disturbance that resulted in the use

---

[1] *Edwards v. Balisok*, 520 U.S. 641, 646–48 (1997) (holding challenge to disciplinary conviction resulting in loss of good time credits was barred by *Heck* because success would imply invalidity of punishment).

[2] *Muhammad v. Close*, 540 U.S. 749, 751 (2004) (per curiam). "[T]he incarceration that matters under *Heck* is the incarceration ordered by the original judgment of conviction, not special disciplinary confinement for infraction of prison rules." *Id.* at 751 n.1.

8

No. 17-20418

of force." To the contrary, Bourne's § 1983 excessive-force claims implicate neither the validity of his underlying conviction nor the duration of his sentence.

Bourne's underlying conviction is for aggravated assault with a deadly weapon. A finding of excessive force here would have no bearing on that conviction. Nor would it negate his disciplinary conviction, potentially affecting the duration of his sentence by restoring his good time credits. Bourne was disciplined for "[t]ampering with a locking mechanism or food tray slot" and "[c]reating a [d]isturbance" resulting from his jamming the food-tray slot to his cell and refusing to relinquish it, thereby requiring the use of force by prison officials. Conversely, the § 1983 excessive-force claims arise from the specific force defendants used after he was restrained on his cell floor. The basis of Bourne's § 1983 excessive-force claims, therefore, is distinct from the basis of his disciplinary conviction. A finding of excessive force would not negate the prison's finding that Bourne violated its policies and was subject to disciplinary action as a result. A ruling in Bourne's favor on his excessive-force claims would not affect his underlying conviction, his disciplinary conviction, or the duration of his sentence. Accordingly, *Heck* and its progeny do not bar Bourne's excessive-force claims.[3]

V.

Regarding QI, "the core judicial inquiry" "whenever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause" is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."

---

[3] *See, e.g., Mosley v. White*, 464 F. App'x 206, 210–11 (5th Cir. 2010) (per curiam). "The district court erred in determining that [plaintiff's] excessive force claim was barred by *Heck* and *Edwards*" because "[s]uccess in the instant action would not affect the validity of [his] underlying conviction or the duration of his sentence." *Id.* at 211.

9

No. 17-20418

*Hudson*, 503 U.S. at 6–7. Courts analyze (1) "the extent of [the] injury suffered," (2) "the need for [the] application of force," (3) "the relationship between that need and the amount of force used," (4) "the threat reasonably perceived by the responsible officials," and (5) "any efforts made to temper the severity of a forceful response." *Id.* at 7 (internal quotation marks and citation omitted); *see also Baldwin v. Stalder*, 137 F.3d 836, 839 (5th Cir. 1998).

"The amount of force that is constitutionally permissible . . . must be judged by the context in which that force is deployed." *Ikerd v. Blair*, 101 F.3d 430, 434 (5th Cir. 1996). Courts must "decide excessive force claims based on the nature of the force rather than the extent of the injury." *Wilkins v. Gaddy*, 559 U.S. 34, 34 (2010) (per curiam). An inmate need not establish a "significant injury" to pursue an excessive force claim because "[i]njury and force . . . are only imperfectly correlated, and it is the latter that ultimately counts." *Id.* at 37–38.

Bourne asserts that "whether or not [he] initially violated prison rules and provoked the [d]efendants is irrelevant, because [he] alleged, and presented evidence to show, that several [d]efendants participated in physically & sexually assaulting [him] while he was on the cell floor, handcuffed & shackled, and not a threat *at that point*." Viewing the evidence in the light most favorable to Bourne and making all inferences in his favor, we conclude that he has demonstrated a genuine dispute of material fact, namely, whether the force employed after he was restrained on his cell floor was used "in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Hudson*, 503 U.S. at 6 (citation omitted).

Defendants submitted their motion for summary judgment together with a video recording, a use-of-force assessment report reviewing the incident, and relevant portions of Bourne's medical and disciplinary records. In the use-of-

No. 17-20418

force report, defendants uniformly state that Bourne resisted them and fought the team, thus necessitating force to subdue him. Responding to the motion for summary judgment, Bourne contested that characterization, asserting that "several [d]efendants hit him in the head and body while he was on the ground and handcuffed" and "non[-]resistant." He supported those contentions with his own sworn declaration, medical records documenting his injuries resulting from the use of force, and unsworn declarations of inmates who allegedly witnessed the event, including one that states "Bourne stopped resisting . . . , but officers continued their . . . attacks . . . while . . . [he] was laying face down."

To the extent that the district court considered Bourne's specific claims regarding the force defendants used after he was restrained on the floor of his cell, it appeared to discredit Bourne's summary judgment rebuttal evidence without reference to video evidence that "blatantly contradicted" or "utterly discredited" that evidence. As the court acknowledged, "[b]ecause Bourne had turned out the lights in the cell, the ensuing altercation cannot be seen from the hallway." Bourne's cell was "completely dark," and "Gunnels stood in the doorway to the cell for most of the use of force," blocking the camera's view. Our own review of the video confirms that it is impossible to tell what occurred during the use of force.

As stated, we must view the evidence in the light most favorable to Bourne, drawing all inferences in his favor, so long as they are not "blatantly contradicted" or "utterly discredited" by a video recording. The video does not depict what occurred during the five minutes between defendants' entering the cell and Bourne's leaving it. Though the video and other materials defendants submit in support of their motion for summary judgment may well establish the constitutionality of defendants' use of force before entering the cell, or their use of force in taking Bourne to the ground, they do not resolve all genuine

11

No. 17-20418

disputes of material fact regarding the use of force after Bourne was restrained in his cell.

Bourne and defendants offer competing versions of what occurred during the use of force and whether defendants applied force after Bourne stopped resisting and was restrained. Defendants assert that Bourne resisted, thus requiring the use of force in a good faith effort to maintain or restore discipline, a contention that is supported by the defendants' yelling "stop resisting" in the video recording. But Bourne opposes those characterizations with his own sworn declaration and the unsworn declarations of other inmates, asserting that because he was restrained and not resisting, the use of force was malicious and sadistic for the very purpose of causing harm. The video does not resolve the dispute, so there remains a genuine dispute of material fact.

The summary judgment is REVERSED and REMANDED for further consideration as we have explained. We place no limitation on what matters the district court can consider, or what decisions it should make, on remand. We express no view on the ultimate merits.