United States District Court
Southern District of Texas
**ENTERED**
February 09, 2023
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MICHAEL BOURNE, TDCJ #1567258, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| LIEUTENANT MICHAEL GUNNELS; | § | CIVIL ACTION NO. H-16-0515 |
| SGT. ANTHONY HOWARD, JR.; OFCR. | § | |
| ROLAND WEAVER; OFCR. ROBERT | § | |
| LEBLANC; OFCR. ERNEST PRICE; | § | |
| and OFCR. TAJUDEEN AJISEFINI, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER
DENYING MOTION FOR NEW TRIAL**

The plaintiff, Michael Bourne, filed this prisoner civil rights action against several correctional officers employed by the Texas Department of Criminal Justice ("TDCJ"), alleging that excessive force was used against him during a cell extraction at the Estelle High Security Unit. On August 24, 2022, a jury returned a verdict in favor of the defendants: Lieutenant Michael Gunnels, Sergeant Anthony Howard, Jr., Officer Roland Weaver, Officer Robert LeBlanc, Officer Ernest Price, and Officer Tajudeen Ajisefini. See Verdict, Docket Entry No. 171, p. 1. Consistent with the jury's verdict the court entered a judgment dismissing this case with prejudice. See Final Judgment, Docket Entry No. 174, p. 1.

Now pending is Plaintiff's Motion for New Trial With Exhibits and Declaration in Support of Motion ("Motion for New Trial"),

Docket Entry No. 176.   The defendants have filed Defendants'
Response in Opposition to Plaintiff's Motion for New Trial
("Defendants' Response"), Docket Entry No. 179; and Bourne has
filed Plaintiff's Reply to Defendants' Response in Opposition to
Plaintiff's Motion for New Trial ("Plaintiff's Reply"), Docket
Entry No. 180.   After careful consideration of the entire record
and the court's clear recollection of the trial, the Motion for New
Trial will be denied for the reasons explained below.

## I.   BACKGROUND

The facts underlying the claims in this case, which stem from
an incident that occurred at the Estelle High Security Unit on
November 21, 2014, have been set forth previously.[1]   The following
summary is based on the evidence presented at trial, which
commenced on August 22, 2022, and finished with a jury verdict on
August 24, 2022,[2] and which featured testimony from the plaintiff,
two inmate witnesses, each of the defendants, and former defendant
Major Carlos Applewhite.[3]

---

[1]See Memorandum Opinion and Order ("MO&O"), Docket Entry
No. 61, pp. 2-11; Opinion, Docket Entry No. 75, pp. 2-4.   For
purposes of identification all page numbers refer to the pagination
imprinted by the court's Electronic Case Filing ("ECF") system.

[2]See Courtroom Minutes, Docket Entry No. 159; Courtroom
Minutes, Docket Entry No. 160; and Courtroom Minutes, Docket Entry
No. 161.

[3]The claims of bystander liability against then-Sergeant
Applewhite were dismissed previously on summary judgment.   See
MO&O, Docket Entry No. 61, p. 31.

Lieutenant Gunnels testified that he obtained authorization under the TDCJ Use of Force Plan to forcibly remove Bourne from his cell after Bourne jammed his food-tray slot and refused to obey orders to release it in violation of prison rules. During this planned use of force, most of which was captured on video by Officer Sascha Ford, Lieutenant Gunnels warned Bourne several times that a chemical agent would be deployed into his cell unless he complied with orders to release his food-tray slot. When Bourne failed to heed those warnings, Lieutenant Gunnels sprayed a quantity of chemical agent into the cell. A team of five officers dressed in protective gear and carrying shields (Sergeant Howard, Officer Weaver, Officer LeBlanc, Officer Price, and Officer Ajisefini) then entered the darkened cell to subdue Bourne.

The jury had several opportunities to watch the video, which featured Bourne refusing to comply with multiple orders and cursing loudly at the officers while causing a disturbance in the cell block. There was a struggle between Bourne and the officers who entered his cell, which lasted several minutes. The altercation could be heard but not seen on the video because the lights were off in Bourne's cell, and there were two supervisory officials (Lieutenant Gunnels and Major Applewhite) who were standing in the doorway shouting instructions. A few minutes later Bourne emerged from the cell in restraints and was escorted to the prison infirmary where he was examined by a nurse.

Bourne's examination in the infirmary was also documented on the use-of-force video.   Bourne reported that his eyes and skin were burning from the chemical agent.   He sustained bruises and scratches on his back, chest, and face, which appeared swollen. Bourne testified that the use of force was unnecessary and that he was beaten gratuitously by the officers while on the ground in his darkened cell.   In addition to the injuries documented by the nurse who examined him following the assault, Bourne testified that he was treated for a concussion and an eye infection at a local hospital several days after the incident.   After hearing all of the evidence, including testimony from two inmate witnesses who were present on the cell block when the use of force occurred (Patrick Holzer and David Hickman), the jury found that the defendants did not apply force maliciously and sadistically for the purpose of causing harm, rather than as the result of a good-faith effort to maintain or restore discipline, and that the defendants did not violate the Eighth Amendment.[4]

Bourne now moves for a new trial under Rule 59 of the Federal Rules of Civil Procedure, arguing that the court erred by (1) excluding relevant evidence; and (2) denying his requests for appointment of counsel.[5]   The defendants argue that the Motion for New Trial must be denied because it is untimely and without merit.[6]

_____

[4]See Verdict, Docket Entry No. 171, p. 1.

[5]See Motion for New Trial, Docket Entry No. 176, pp. 1-2.

[6]See Defendants' Response, Docket Entry No. 179, pp. 2-3.

-4-

## II.  __STANDARD OF REVIEW__

Motions for new trial are governed by Rule 59 of the Federal Rules of Civil Procedure.  A district court has discretion to grant a new trial when doing so is necessary to prevent an injustice.  See Seibert v. Jackson County, Mississippi, 851 F.3d 430, 438 (5th Cir. 2017).  A jury verdict is entitled to great deference.  See Dresser-Rand Co. v. Virtual Automation Inc., 361 F.3d 831, 838 (5th Cir. 2004).  "New trials should not be granted on evidentiary grounds unless, at a minimum, the verdict is against the great weight of the evidence."  Dawson v. Wal-Mart Stores, Inc., 978 F.2d 205, 208 (5th Cir. 1992).

Apart from arguments based on evidentiary sufficiency, motions for new trial are reviewed under the harmless-error standard: "Unless justice requires otherwise, no error in admitting or excluding evidence — or any other error by the court or a party — is ground for granting a new trial, for setting aside a verdict, or for vacating, modifying, or otherwise disturbing a judgment or order."  Fed. R. Civ. P. 61.  Thus, in deciding a motion for new trial, "the court must disregard all errors and defects that do not affect any party's substantial rights."  Id.  In other words, to be entitled to a new trial based on erroneously admitted or excluded evidence, the party seeking a new trial must show that the trial court both erred in its decision and that the error adversely influenced the jury's verdict.  See Munn v. Algee, 924 F.2d 568, 571-73 (5th Cir. 1991).

### III.  <u>DISCUSSION</u>

**A.   Timeliness**

"A motion for a new trial must be filed no later than 28 days after the entry of judgment." Fed. R. Civ. P. 59(b). "The time limit for filing a new trial motion imposed in Rule 59(b) is mandatory and jurisdictional; it cannot be extended by the trial court." <u>Tarlton v. Exxon,</u> 688 F.2d 973, 977 (5th Cir. 1982). Because the court entered its final judgment in this case on August 24, 2022,[7] a motion for new trial was due on September 21, 2022. Noting that the Motion for New Trial was not entered on the court's docket sheet until on September 29, 2022, the defendants argue that the motion should be denied as untimely.[8]

Although the Motion for New Trial was received by the court on September 29, 2022, Bourne indicates in the certificate of service that he submitted the motion to the prison mail system for delivery on September 14, 2022.[9]  Pointing to the certificate of service, Bourne argues that he placed his copy of the Motion for New Trial in the prison mail system for delivery to the court along with a copy to defendants' counsel at the State Attorney General's Office within the time allowed by Rule 59(b).[10]  Bourne correctly notes

---

[7]<u>See</u> Final Judgment, Docket Entry No. 174.

[8]<u>See</u> Defendants' Response, Docket Entry No. 179, p. 3.

[9]<u>See</u> Motion for New Trial, Docket Entry No. 176, pp. 14-15.

[10]<u>See</u> Plaintiff's Reply, Docket Entry No. 180, pp. 1-2.

-6-

that, as a prison inmate, his pleadings are treated as filed on the date that they are placed in the prison mail system for delivery to the court, rather than the date they are received. See Houston v. Lack, 108 S. Ct. 2379, 2382-83 (1988); see also Spotville v. Cain, 149 F.3d 374, 378 (5th Cir. 1998) (explaining that a prisoner's pleadings are deemed filed under the prison mailbox rule at the time his papers are delivered to prison authorities for mailing).

To resolve the issue of timeliness, the court directed the defendants to supplement the record with prison records for inmate legal mail during the relevant time for filing a motion under Rule 59.[11]  In response, the defendants have provided inmate legal mail records from Bourne's assigned prison facility, which are summarized in an affidavit from Mail Room Supervisor Debbie Kelley.[12]  According to Kelley, the "Outgoing Legal, Special and Media Mail Log" records confirm that the Allred Unit mail room received two items of legal mail from Bourne on September 15, 2022, for delivery to the court and to defendants' counsel.[13]  This is consistent with the date shown on the certificate of service, which demonstrates that Bourne executed his Motion for New Trial the

---

[11]See Order for Inmate Legal Mail Records, Docket Entry No. 181.

[12]See Affidavit of Debbie Kelley ("Kelley Affidavit"), Exhibit C to Defendants' Supplement Pursuant to Court's Order ("Defendants' Supplement"), Docket Entry No. 182-3.

[13]See id. at 3; see also Outgoing Legal, Special and Media Mail Log, Exhibit A to Defendants' Supplement, Docket Entry No. 182-1, p. 35.

previous day, September 14, 2022, and tendered it to prison officials for delivery to the court before the deadline found in Rule 59(b) expired.[14]   The records show that one item, which was addressed to this court's chambers, was returned on September 16, 2022, due to insufficient postage.[15]   The correct postage was applied and the item was delivered to the United States Postal Service on September 21, 2022.[16]   The records do not show that the lack of sufficient postage was attributable to Bourne or that he failed to place a properly addressed Motion for New Trial in the prison mail system before the deadline found in Rule 59(b) expired on September 21, 2022.   As a result, the defendants have not demonstrated that the Motion for New Trial was untimely or that it is barred from consideration under Rule 59(b).

## B.   Evidentiary Rulings

Bourne moves for a new trial under Rule 59(b) of the Federal Rules of Civil Procedure, arguing that the court erred by excluding relevant evidence in the form of (1) disciplinary records belonging to Sergeant Howard, Officer Weaver, and Officer Ajisefini, and Major Applewhite; (2) testimony from the plaintiff and other inmate witnesses, Patrick Holzer and David Hickman, about

---

[14]See Motion for New Trial, Docket Entry No. 176, pp. 14-15.

[15]See Kelley Affidavit, Docket Entry No. 182-3, p. 4.

[16]See id.; see also Incoming Legal, Special and Media Mail Log, Exhibit B to Defendants' Supplement, Docket Entry No. 182-2, p. 3.

other "prior bad acts" by the defendants; (3) a witness statement from the TDCJ Use of Force Report from Officer Sascha Ford, who was unavailable for trial; (4) plaintiff's testimony about the cause of his injuries; and (5) plaintiff's commissary receipts from the time of the incident.[17]  Each argument is addressed in turn.

### 1.  Disciplinary Reports

Before trial the defendants moved to exclude testimony, evidence, or reference to any disciplinary action or reprimand against the officers under Fed. R. Evid. 401, 403, and 404(b).[18] Bourne contends that the court erred by granting that motion and excluding disciplinary reports against Sergeant Howard, Officer Weaver, Officer Ajisefini, and Major Applewhite, which would have shown that these defendants had been involved in previous misconduct.[19]  Bourne argues that the disciplinary reports should have been admitted as evidence of their bad character under Rule 404(b)(2) of the Federal Rules of Evidence.[20]

Bourne does not provide copies of the disciplinary reports, but he provides citations to his disclosures and describes the misconduct as follows:

---

[17]See Motion for New Trial, Docket Entry No. 176, pp. 1-2.

[18]See Defendants' Motion[] in Limine, Docket Entry No. 96, pp. 2-3.

[19]See Motion for New Trial, Docket Entry No. 176, p. 2.

[20]See id.

1.  A few months before the use of force involving Bourne, Officer Weaver assaulted an unidentified inmate and tried to cover it up.

2.  At an unspecified time, Officer Ajisefini "maced a prisoner with pepper spray" "because the prisoner did something he disliked."

3.  At an unspecified time, Sergeant Howard and another officer were escorting a prisoner in handcuffs who "accidentally" fell and hurt himself.  During that same incident one of the officers (Bourne does not say which one) "roundhouse kick[ed] another inmate."

4.  During his career with TDCJ, Major Applewhite has reportedly been "written up" for filing "false disciplinary cases on inmates,[] making degrading remarks toward inmates,[] entering inmates cells to fight them,[] and an array of other write ups showing his disregard of TDCJ policy."[21]

Bourne indicates that these disciplinary reports resulted in only minor reprimands and that Applewhite was eventually promoted from Sergeant to "Unit Major" despite being recommended at one time for dismissal.[22]  He argues that the reports are proof that Weaver, Ajisefini, and Howard entered his cell with hostile intent and that TDCJ routinely tolerates officer misconduct.[23]

The court excluded the reports as irrelevant, unduly prejudicial, and inadmissible under Rules 403 and 404(b).  Under Rule 401, evidence is relevant "if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."

---

[21]Id. at 11-12 (footnotes omitted).

[22]Id. at 12-13.

[23]Id. at 13.

-10-

Fed. R. Evid. 401. Rule 403 requires the exclusion of relevant evidence "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Rule 404(b)(1) prohibits evidence of other crimes, wrongs, or acts "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Under a limited exception found in Rule 404(b)(2), evidence of other crimes, wrongs, or acts is admissible to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2).

Bourne notes that the court cited to three district court decisions when excluding the proposed disciplinary reports: (1) Huval v. Louisiana State University Police Dep't, Civil Action No. 16-00553, 2018 WL 3199460 (M.D. La. June 29, 2018); (2) Herrera v. Aguilar, Cv. No. SA-10-CV-00569, 2013 WL 5354518 (W.D. Tex. Sept. 24, 2013); and (3) Graniczny v. City of El Paso, Texas, 809 F. Supp. 2d 597 (W.D. Tex. 2011).[24] In each of these decisions the district courts excluded evidence of an officer's disciplinary history because the prejudicial effect outweighed its probative value for purposes of Fed. R. Evid. 403. See Graniczny, 809 F. Supp. 2d at 605-606; Huval, Civ. No. 16-00553, 2018 WL 3199460,

---

[24]See Motion for New Trial, Docket Entry No. 176, p. 2 n.2.

at \*3; <u>Herrera,</u> 2013 WL 5354518, at \*3 (citing <u>Maddox v. City of</u> <u>Los Angeles,</u> 792 F.2d 1408, 1417-18 (9th Cir. 1986) and <u>Tanberg v.</u> <u>Sholtis,</u> 401 F.3d 1151, 1164-65 (10th Cir. 2005)).

Bourne contends that this court erred by relying on the district court decisions in <u>Graniczny, Huval,</u> and <u>Herrera</u> because evidence of the defendants' bad character is admissible under Rule 404(b), relying on <u>Lamar v. Steele,</u> 693 F.2d 559 (5th Cir. 1982).[25]  In <u>Lamar</u> the plaintiff was a "writ writer" in the Texas prison system who sued a correctional officer for denying him access to the courts.  <u>Id.</u> at 560.  The plaintiff in <u>Lamar</u> alleged that the officer:  "(1) burned his legal documents, (2) asked one inmate to assault him, (3) asked another to kill him, (4) invited him to pick up and attempt to use a small knife while he ([the defendant]) held a substantial hunting knife in his hand out of view, and (5) promised to send him home 'in a pine box.'"  <u>Id.</u> at 561.  The Fifth Circuit affirmed the trial court's decision to admit testimony at trial under Rule 404(b) from another inmate who stated that on a prior occasion the officer had given him a knife and asked him to kill another writ writer.  <u>Id.</u> at 561.  The Fifth Circuit clarified that for character evidence to be admissible under Rule 404(b) "the conduct tendered must be sufficiently similar to the act under inquiry to minimize any doubt that the two are products of the same mind."  <u>Id.</u> (citing McCormick, Evidence

---

[25]<u>Id.</u> at 2.

§ 157 (1954)).  Noting that the evidence at issue was probative of
the officer's "desire to purge the prison of writ writing" and
"furnished a reason for the acts of which Lamar complained," the
Fifth Circuit found no abuse of discretion in admitting testimony
of his prior bad act.  <u>Id.</u>

The defendants argue that the disciplinary reports were
properly excluded because Bourne was seeking to admit them as
evidence that the defendants had a general propensity to engage in
violence and that their actions were in conformity with their
character on prior occasions.[26]  Bourne does not establish that the
reports were admissible or that <u>Lamar</u> mandates a different result.
Unlike the decisions in <u>Graniczny, Huvel,</u> and <u>Herrera,</u> the opinion
in <u>Lamar</u> did not involve evidence of previous disciplinary reports
against an officer.   More importantly, unlike the plaintiff in
<u>Lamar,</u> Bourne has not alleged facts showing that the circumstances
outlined in the disciplinary reports bear any similarity to the
actions allegedly taken by the individual defendants during the
planned use of force at issue, which involved the extraction of an
inmate from his cell who was creating a disturbance on the cell
block.  <u>See Lamar,</u> 693 F.2d at 561.  For this reason, Bourne's
reliance on <u>Lamar</u> is unpersuasive.

The record shows that none of the defendants on trial were
disciplined in connection with the use of force involving Bourne at

---

[26]<u>See</u> Defendants' Response, Docket Entry No. 179, p. 5.

the Estelle High Security Unit on November 21, 2014.[27]  Based on the
facts of this case, Bourne has not shown that the probative value
of the proposed disciplinary reports would have outweighed the
danger of unfair prejudice and confusion.  See Fed. R. Civ. P. 403.
Bourne does not otherwise show that it would have been proper to
present evidence of prior disciplinary reports as proof of the
defendants' propensity to engage in violent acts.  See, e.g.,
Crenshaw v. Herbert, 409 F. App'x 428, 430 (2d Cir. 2011)
(affirming the district court's decision to deny a motion to compel
discovery of an officer's disciplinary reports, explaining that
"even if evidence of a prior substantiated excessive force
investigation existed, on the facts of the particular case before
us such evidence would be inadmissible to show that [the defendant]
acted violently in this instance") (citing Fed. R. Evid. 404(b))).
Therefore, he does not show that those reports were improperly
excluded or that he is entitled to a new trial on this basis.

    2.   Testimony from Bourne, Patrick Holzer, and David Hickman

       Bourne contends the court erred by sustaining objections from
defendants' counsel to testimony he attempted to give on his own
behalf and testimony that he attempted to elicit from two inmates

---

[27]See TDCJ Use of Force Report, Exhibit B to Defendants' Motion
for Summary Judgment With Brief in Support ("Defendants' MSJ"),
Docket Entry No. 56-2, pp. 7, 9 (stating that no officers were
disciplined in connection with the use of force on November 21,
2014, but that the camera operator, Officer Ford, was counseled
about keeping the prisoner in full view of the camera at all times
possible).

(Patrick Holzer and David Hickman), who were present at the Estelle High Security Unit when the use of force occurred.[28]   The testimony that Bourne attempted to elicit was about other uses of force that occurred in the prison as proof of the defendants' propensity to commit violence against inmates.[29]   For reasons discussed above in connection with previous disciplinary reports involving the defendants, Bourne does not show that the proposed testimony was admissible under Rule 404(b) or that the court erred by sustaining objections made by defendants' counsel.

### 3.   Officer Ford's Witness Statement

Officer Ford, who was dismissed as a defendant previously in this case,[30] was summoned as a witness for the plaintiff, but was excused from attending trial because his wife was suffering from Stage III cancer and he was her only caregiver.[31]   Bourne argues that the court improperly excluded evidence in the form of a witness statement given by Officer Ford, who was responsible for videotaping the use of force.[32]   Bourne points to a statement that Ford gave during the administrative use-of-force investigation in which Ford stated that Bourne was "fight[ing]" with the other

---

[28]See Motion for New Trial, Docket Entry No. 176, pp. 1-2.

[29]Id. at 2.

[30]See MO&O, Docket Entry No. 61, p. 31.

[31]See Defendants' Advisory to the Court Regarding Availability of Plaintiff's Witnesses for Trial, Docket Entry No. 157, pp. 2-3.

[32]See Motion for New Trial, Docket Entry No. 176, pp. 6-7.

correctional officers who entered his cell.[33]  Noting that the video
showed that his cell was dark, Bourne argues that the statement
could have implicated the credibility of the other officers whose
testimony mirrored Ford's statement and was therefore excluded
improperly.[34]

The defendants argue that the witness statement from Officer
Ford, as part of the TDCJ Use of Force Report about the incident,[35]
was properly excluded as hearsay within hearsay.[36]  Hearsay within
hearsay is inadmissible unless each part of the combined statements
conforms with an exception to the rule prohibiting hearsay.  See
Fed. R. Evid 803, 805.  The TDCJ Use of Force Report may have been
admissible under an exception to the hearsay rule as a public
record that sets forth factual findings from a legally authorized
investigation.  See Fed. R. Evid. 803(8)(A)(iii).  However, Bourne
does not show that the witness statement contained in that report
was admissible.  See, e.g., United States v. Dotson, 821 F.2d 1034,
1035 (5th Cir. 1987) (per curiam) (holding that a witness statement
within a police report was inadmissible and should have been
excluded as hearsay within hearsay).

---

[33]See id. at 7.

[34]See id.

[35]See TDCJ Use of Force Report, Exhibit B to Defendants' MSJ,
Docket Entry No. 56-2, pp. 36-37.

[36]See Defendants' Response, Docket Entry No. 179, pp. 5-6.

-16-

Even assuming that the witness statement within the Use of Force Report was admissible, Bourne fails to show how Officer Ford's observation that Bourne was fighting with the officers who entered his cell would have been helpful to his case. Instead, the statement appears to support the defendants' contention that Bourne actively resisted the officers who entered his cell and that force was necessary to restore order. Under these circumstances, Bourne does not show that the court erred by excluding Officer Ford's witness statement or that he was harmed as a result.

4. <u>Testimony About Bourne's Injuries</u>

Bourne contends that the court erred by limiting testimony that he planned to present about the injuries he sustained during the use of force.[37] Bourne argues that portions of his testimony were improperly excluded as hearsay evidence when he "simply attempted to testify about what the doctors treating him at Huntsville Memorial Hospital told him his injuries were, and how they were caused."[38]

Bourne does not show that testimony about what a doctor told him was excluded improperly as an out-of-court statement prohibited by the hearsay rule. <u>See</u> Fed. R. Evid. 801(c). He also does not show that he was prejudiced as a result of the ruling. The defendants note that Bourne could have presented his own medical

---

[37] <u>See</u> Motion for New Trial, Docket Entry No. 176, pp. 7-8.

[38] <u>Id.</u> at 7.

-17-

records as evidence of his injury.[39]  Even without those records, Bourne was able to give testimony that described the extent of his injuries; and the jury had an opportunity to view the use-of-force video, which showed the physical examination that he received in the prison infirmary immediately following the incident.  Because Bourne had an opportunity to present evidence in support of his Eighth Amendment claim, he fails to show that he is entitled to a new trial as a result of the court's decision to exclude this testimony.

### 5.  Commissary Receipts

Bourne notes that he and the two inmate witnesses who testified told the jury that Sergeant Howard threw away items of Bourne's property following the use of force.[40]  Because Howard and Major Applewhite denied that Bourne's property was discarded, Bourne argues that the court erred by excluding evidence in the form of commissary receipts, which Bourne wanted to use for purposes of impeaching their credibility.[41]  Bourne argues further that the commissary receipts also would have shown Sergeant Howard's "hostile motive" and intent to act maliciously during the use of force.[42]

---

[39] See Defendants' Response, Docket Entry No. 179, p. 6.

[40] See Motion for New Trial, Docket Entry No. 176, p. 8.

[41] Id. at 8-9.

[42] Id. at 9.

Bourne has provided commissary receipts for a "Pot-Hot," an alarm clock, a pair of work boots, a lamp, a fan, and other items, but the receipts only prove that he purchased them at some point before the use of force occurred.[43] The receipts do not prove that he remained in possession of this property on November 21, 2014, or that an officer discarded them following the use of force. Therefore, Bourne does not demonstrate that the receipts were relevant or that the court erred by excluding them. Because Bourne and his witnesses were allowed to testify that the items were thrown away, Bourne has not otherwise shown that he was harmed as a result of the court's decision to exclude the receipts. As a result, Bourne fails to show that any of the evidentiary rulings were erroneous or that a new trial is required to prevent an injustice.

## C. Appointment of Counsel

Bourne argues that the court erred and that he is entitled to a new trial because he was denied appointment of counsel.[44] The court denied Bourne's motion for appointment of counsel and his request to reconsider that decision shortly before trial.[45] There is no right to court-appointed counsel in civil cases. See

---

[43]See Commissary Receipts, Exhibit A to Motion for New Trial, Docket Entry No. 176-1, pp. 2-6.

[44]See Motion for New Trial, Docket Entry No. 176, p. 1.

[45]See Order dated June 3, 2019, Docket Entry No. 82, p. 3; Order dated August 5, 2022, Docket Entry No. 148, pp. 4-5.

Baranowski v. Hart, 486 F.3d 112, 126 (5th Cir. 2007); Ulmer v. Chancellor, 691 F.2d 209, 212 (5th Cir. 1982). A district court is not required to locate counsel for an indigent litigant unless a case presents exceptional circumstances. See Naranjo v. Thompson, 809 F.3d 793, 803 (5th Cir. 2015). In making that determination, the Fifth Circuit has identified the following factors that a district court should consider, including:

1.  the type and complexity of the case;

2.  the [plaintiff]'s ability to present and investigate his case;

3.  the presence of evidence which largely consists of conflicting testimony so as to require skill in presentation of evidence and in cross-examination; and

4.  the likelihood that appointment will benefit the [plaintiff], the court, and the defendants by shortening the trial and assisting in just determination.

Naranjo, 809 F.3d at 799 (quoting Parker v. Carpenter, 978 F.2d 190, 193 (5th Cir. 1992)).

The record reflects that Bourne has done a skillful job of representing himself throughout this case. His pleadings are articulate and well researched, demonstrating familiarity with the relevant law and procedures. He argued cogently and capably on his own behalf during two pretrial conferences and at trial, where the court was impressed by his knowledge of the facts and his preparation. He presented his own testimony in an organized manner and called two other inmates as witnesses. He raised appropriate objections and cross-examined the defendants and their witnesses.

-20-

The issue presented in this case was not factually or legally complex, and there was no indication before or during trial that Bourne was unable to present his version of the events without assistance.   He does not indicate with specificity what else trained counsel could have done if an attorney had been appointed to represent him during the trial.   Although Bourne presents evidence showing that he was prescribed a variety of medications for a schizo-affective disorder, ADHD, bi-polar depression, and obsessive compulsive disorder,[46] he did not appear to be laboring under a mental illness or to be incapable of representing himself at any point during the proceeding.   Therefore, he does not show that a new trial is warranted for lack of appointed counsel or for any other reason.

## IV.   Conclusion and Order

Accordingly, it is **ORDERED** that the Plaintiff's Motion for New Trial (Docket Entry No. 176) is **DENIED**.

The Clerk shall provide a copy of this Memorandum Opinion and Order Denying Motion for New Trial to the parties.

**SIGNED** at Houston, Texas, on this 9th day of February, 2023.

SIM LAKE
SENIOR UNITED STATES DISTRICT JUDGE

---

[46]See EMR Medication Print Pass, Exhibit B to Motion for New Trial, Docket Entry No. 176-1, pp. 8-9; see also Plaintiff's Declaration in Support of Motion for New Trial, Exhibit C to Motion for New Trial, Docket Entry No. 176-1, pp. 14-15.